UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————— x
In re NORTEL NETWORKS CORP.        :   Civil Action No. 01-CV-1855 (RMB)
SECURITIES LITIGATION              :
                                   :
—————————————————                  :   CLASS ACTION
                                   :
This Document Relates To:          :
                                   :
    ALL ACTIONS.                   :
—————————————————  x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/29/07

## ORDER AND FINAL JUDGMENT

On the 26th day of October, 2006, a hearing having been held before this Court to determine: (1) whether the terms and conditions of the Stipulation and Agreement of Settlement dated June 20, 2006 (the "Stipulation") are fair, reasonable and adequate for the settlement of all claims asserted by the U.S. Global Class against the Defendants in the Complaint now pending in this Court under the above caption, including the release of the Defendants and the Released Parties, and should be approved; (2) whether judgment should be entered dismissing the Complaint on the merits and with prejudice in favor of the Defendants and as against all persons or entities who are members of the U.S. Global Class herein who have not requested exclusion therefrom; (3) whether to approve the Plan of Allocation as a fair and reasonable method to allocate the settlement proceeds among the members of the U.S. Global Class; and (4) whether and in what amount to award Lead Plaintiff's Counsel fees and reimbursement of expenses.

The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing substantially in the form approved by the Court (including French language versions sent to addresses in Quebec, Canada) was mailed to all persons or entities reasonably identifiable, who purchased common stock of Nortel Networks

Corporation ("Nortel"), or call options on Nortel common stock, or wrote (sold) put options on Nortel common stock during the period between October 24, 2000 through February 15, 2001, inclusive (the "Class Period"), except those persons or entities excluded from the definition of the U.S. Global Class or who previously excluded themselves from the U.S. Global Class, as shown by the records of Nortel's transfer agent, and the records compiled by the Claims Administrator in connection with its previous mailing of the Notice of Pendency, at the respective addresses set forth in such records, as set forth in the Affidavit of Neil L. Zola Regarding the Mailing of the Nortel I Settlement Notice and Proof of Claim Form, dated September 1, 2006 (the "Zola Affidavit"), and that a summary notice of the hearing substantially in the form approved by the Court was published pursuant to the Notice Plan as set forth in the Declaration of Jeanne C. Finegan, APR, dated October 18, 2006. The Court having reviewed and considered the responses and objections submitted by Class Members as filed herein in the Affidavit of David A. Isaac Regarding Exclusion Requests and Objections Received for Nortel I, dated October 3, 2006, the Supplemental Affidavit of David A. Isaac Relating to Late Exclusion Requests and Late Objections, dated October 23, 2006, the Affidavit of Randi Alarcon Collotta Relating to Additional Responses and Objections Filed dated October 25, 2006, the Supplemental Affidavit Randi Alarcon Collotta Relating to Additional Exclusions and Objections Filed dated November 1, 2006, the Supplemental Affidavit Relating to Additional Late Exclusions and Objection (Fourth GCG Report of Exclusions and Objections) of Randi Alarcon Collotta dated December 4, 2006, and the Supplemental Affidavit Relating to Additional Late Exclusions (Fifth GCG Report) of Randi Alarcon Collotta dated December 18, 2006 (attaching as Exhibit B a list of all exclusion requests postmarked on or before October 26, 2006), and the Court having considered and determined the fairness and reasonableness of the

award of attorneys' fees and expenses requested by Lead Plaintiff's Counsel; and all capitalized terms used herein having the meanings as set forth and defined in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Court has jurisdiction over the subject matter of the Action, the Lead Plaintiff, all U.S. Global Class Members, and the Defendants.

2. The Court finds that the prerequisites for a class action under (United States) Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied in that: (a) the number of U.S. Global Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the U.S. Global Class; (c) the claims of the U.S. Global Class Representatives are typical of the claims of the U.S. Global Class they seek to represent; (d) the Class Representatives have and will fairly and adequately represent the interests of the U.S. Global Class; (e) the questions of law and fact common to the members of the U.S. Global Class predominate over any questions affecting only individual members of the U.S. Global Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3. Pursuant to Rule 23 of the (United States) Federal Rules of Civil Procedure this Court hereby finally certifies this action as a class action on behalf of all persons and entities who purchased Nortel common stock, or purchased call options on Nortel common stock, or wrote (sold) put options on Nortel common stock (collectively, "Nortel Securities") during the period between October 24, 2000 through February 15, 2001, inclusive, and who suffered damages thereby, including, but not limited to, those persons or entities who traded in Nortel Securities on the New York Stock Exchange and/or the Toronto Stock Exchange. Excluded from the U.S. Global Class are Defendants, members of any of the Individual Defendants'

3

immediate families, any entity in which any Defendant has a controlling interest or is a parent or subsidiary of or is controlled by the Company, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors or assigns of any of the Defendants. Also excluded from the U.S. Global Class for this Action are the persons and/or entities who, in connection with the Notice of Pendency, previously excluded themselves as listed on Exhibit 1 annexed hereto, and those who in response to the Settlement Notice have now requested exclusion from the U.S. Global Class by filing a request for exclusion postmarked on or before October 26, 2006 as listed Exhibit 2 annexed hereto.

4. Notice of the pendency of this Action as a class action and of the proposed Settlement was given to all U.S. Global Class Members who could be identified with reasonable effort. The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the (United States) Federal Rules of Civil Procedure, Section 21D(a)(7) of the (United States) Securities Exchange Act of 1934, 15 U.S.C. 78u-4(a)(7), as amended, including by the (United States) Private Securities Litigation Reform Act of 1995 (the "PSLRA") , Rule 23.1 of the Local Rules of the Southern and Eastern Districts of New York, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

5. The Settlement is approved as fair, reasonable and adequate. Subject to the terms and provisions of the Stipulation and the conditions therein being satisfied, the parties are directed to consummate the Settlement.

6.     The Gross Settlement Shares are to be issued solely in exchange for bona fide outstanding claims. All parties to whom it is proposed to issue such securities have had the right to appear at the hearing on the fairness of the Settlement and adequate notice has been given to all such parties. The Court recognizes and acknowledges that one consequence of its approval of the Settlement at the Settlement Fairness Hearing is that, pursuant to Section 3(a)(10) of the (United States) Securities Act of 1933, as amended, 15 U.S.C. § 77c(a)(1), the Gross Settlement Shares may be distributed to Class Members (and to Plaintiffs' Counsel as may be awarded by the respective Courts for attorneys' fees) without registration and compliance with the prospectus delivery requirements of the U.S. securities laws as the Gross Settlement Shares will be exempt from registration under the (United States) Securities Act of 1933, 15 U.S.C. § 77c(a)(1), as amended, pursuant to Section 3(a)(10) thereunder. The Court also acknowledges that Nortel will rely on such 3(a)(10) exemption (and Nortel will not register the Gross Settlement Shares under the (United States) Securities Act of 1933) based on this Court's approval of the fairness of the Settlement.

7.     The Complaint, which the Court finds was filed on a good faith basis in accordance with the Private Securities Litigation Reform Act and Rule 11 of the (United States) Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed in its entirety with prejudice and without costs, except as provided in the Stipulation, as against the Defendants.

8.     Lead Plaintiff and each U.S. Global Class Member who has not validly opted out, whether or not such U.S. Global Class Member executes and delivers a Proof of Claim, on behalf of themselves, their heirs, executors, administrators, successors and assigns, are hereby permanently barred and enjoined from instituting, commencing or prosecuting any and all

5

claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, provincial, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, including both known claims and Unknown Claims, (i) that have been asserted in this Action by the U.S. Global Class Members or any of them against any of the Released Parties, or (ii) that could have been asserted in any forum by the U.S. Global Class Members or any of them against any of the Released Parties which arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and which relate to the purchase of Nortel common stock or call options on Nortel common stock or the sale of put options on Nortel common stock during the Class Period, or (iii) any oppression or other claims under the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended, that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions during the Class Period, set forth or referred to in the Nortel I Actions, (the "Settled Claims"), against any and all of the Defendants, their past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, attorneys, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the

Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest or assigns of the Defendants (the "Released Parties"); *provided, however,* that "Settled Claims" does not mean or include (a) claims, if any, against the Released Parties arising under the (United States) Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA") which are not common to all U.S. Global Class Members and which are the subject of an action pending before the Judicial Panel on Multidistrict Litigation, denominated *In re Nortel Networks Securities and "ERISA" Litigation*, MDL Docket No. 1537; (b) the action in *Rohac, et al. v. Nortel Networks Corporation, et al.*, Court File No. 04-CV-3268 (Ont. Sup. Ct. J.); and (c) the application brought in *Indiana Electrical Workers Pension Trust Fund IBEW and Laborers Local 100 and 397 Pension Fund v. Nortel Networks Corporation*, Ontario Superior Court of Justice, Court File No. 49059, for leave pursuant to the Canada Business Corporations Act to commence a representative action in the name of and on behalf of Nortel against certain of the Released Parties (the "Derivative Application"). Each U.S. Global Class Member who has not validly opted out has fully, finally, and forever released, relinquished, and discharged all Settled Claims against the Released Parties and each such U.S. Global Class Member is bound by this judgment, including without limitations, the release of claims as set forth in the Stipulation. The Settled Claims are hereby compromised, settled, released, discharged and dismissed as against the Released Parties on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

9.  Defendants Nortel, Clarence Chandran and John Roth, and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, provincial, local, statutory or common law or any

7

other law, rule or regulation, including both known claims and unknown claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Lead Plaintiff, U.S. Global Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement, confidentiality obligations or in respect of the Derivative Application) (the "Settled Defendants' Claims"). The Settled Defendants' Claims of all the Released Parties are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment. In the event that any of the Released Parties asserts against the Lead Plaintiff, any U.S. Global Class Member or their respective counsel, any claim that is a Settled Defendants' Claim, then Lead Plaintiff, such U.S. Global Class Member or counsel shall be entitled to use and assert such factual matters included within the Settled Claims only against such Released Party in defense of such claim but not for the purposes of asserting any claim against any Released Party.

10. Pursuant to the PSLRA, the Released Parties are hereby discharged from all claims for contribution by any person or entity other than by Released Parties, whether arising under state, provincial, federal or common law, based upon, arising out of, relating to, or in connection with the Settled Claims of the U.S. Global Class or any U.S. Global Class Member. Accordingly, to the full extent provided by the PSLRA, the Court hereby bars all claims for contribution: (a) against the Released Parties by any person or entity other than the Released Parties; and (b) by the Released Parties against any person or entity other than the Released Parties.

11. Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a) offered or received against the Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Defendants;

(b) offered or received against the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant;

(c) offered or received against the Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that Defendants may refer to it to effectuate the liability protection granted them hereunder;

(d) construed against the Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

9

(e) construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or any of the U.S. Global Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Gross Settlement Fund.

12. The Plan of Allocation is approved as fair and reasonable, and Plaintiff's Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.

13. The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the (United States) Federal Rules of Civil Procedure as to all proceedings herein.

14. *As more fully explained in Exhibit A hereto,* Lead Plaintiff's Counsel in this Action are hereby awarded attorneys' fees in the amount of **3**% of the Gross Cash Settlement Fund (net of litigation expenses awarded in the next sentence), and **3**% of the Gross Settlement Shares, which amounts the Court finds to be fair and reasonable. Lead Plaintiff's Counsel are hereby awarded $ **3,750,041.27** in reimbursement of expenses, which expenses shall be paid to Plaintiff's Lead Counsel from the Gross Cash Settlement Fund with interest from the date such Gross Cash Settlement Fund was funded to the date of payment at the same net rate that the Gross Cash Settlement Fund earns. The award of attorneys' fees shall be allocated among plaintiffs' counsel in a fashion which, in the opinion of Plaintiff's Lead Counsel, fairly compensates such counsel for their respective contributions in the prosecution and settlement of the Action.

*RMB*

15. The fees and expenses of plaintiffs' counsel in the Canadian Actions, as determined by the Canadian Courts shall be paid from the Gross Settlement Fund.

10

16. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Gross Settlement Fund, the Court has considered and found that:

(a) the Settlement has created a cash fund of $438,667,428 that is already on deposit earning interest, and will also provide for the benefit of the Class 314,333,875 (pre-consolidation) shares of Nortel common stock, as may be adjusted in accordance with paragraph 4(d) of the Stipulation;

(b) The Settlement will entitle the Class to receive one-quarter of any actual gross recovery by Nortel in the existing litigation by Nortel against Frank Dunn, Douglas Beatty and Michael Gollogly (including the value of any monetary benefit that Nortel might receive from the defendants by way of forgiveness or cancellation of any monetary debt owed by Nortel to such defendants), excluding attorneys' fees and expenses awarded by the court, if any;

(c) Nortel has agreed to adopt the corporate governance enhancements described in Appendix A to Tab 1 to Exhibit A of the Stipulation;

(d) As set forth in the Zola Affidavit and the Supplemental Isaac Affidavit, over 1,452,000 copies of the Notice were disseminated to putative Class Members indicating that Lead Plaintiff's Counsel were moving for attorneys' fees in the amount of up to 10% of the Gross Settlement Fund less litigation expenses awarded by the Court, and for reimbursement of expenses in an amount of approximately $5 million, and as shown in the Affidavits of David A. Isaac and Randi Alarcon Collotta, a total of only forty-three (43) objections were filed concerning the terms of the proposed Settlement or the ceiling on the fees and expenses requested by Lead Plaintiff's Counsel contained in the Notice;

(e) Lead Plaintiff's Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(f) The action involves complex factual and legal issues and was actively prosecuted over six years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(g) Had Lead Plaintiff's Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the Class may have recovered less or nothing from the Defendants;

(h) Lead Plaintiff's Counsel have devoted over 47,800 hours, with a lodestar value in excess of $16,655,000, to achieve the Settlement; and

(i) The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

17. Any appeal or any challenge affecting the approval of (a) the Plan of Allocation submitted by Lead Plaintiff's Counsel and/or (b) this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the other provisions of this Final Judgment.

18. Jurisdiction is hereby retained over the parties and the U.S. Global Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the U.S. Global Class.

19. In the event that the Settlement does not become Final in accordance with the terms of the Stipulation, or is terminated pursuant to ¶ 27 of the Stipulation, this judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and in such event all orders entered and released by and in accordance with the Stipulation.

20. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

21. There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the (United States) Federal Rules of Civil Procedure.

Dated: New York, New York
, ~~2006~~
1/29/07

/s/ RMB
RICHARD M. BERMAN
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re NORTEL NETWORKS CORP. SECURITIES         :
LITIGATION                                     :     **EXHIBIT A**
                                               :     **ATTORNEYS' FEES**
                                               :
------------------------------------------------------------------X

**I.     Introduction**

   Lead Plaintiff's Counsel seeks attorneys' fees in the amount of 8.5% of the $438,667,428 Gross Cash Settlement Fund, 8.5% of the 314,333,875 Gross Settlement Shares, plus $3,750,041.27 in expenses, which would total approximately $101 million in fees and expenses and which is proposed to be shared among nine law firms ("Fee Application").[1] (See Memorandum of Law in Support of Plaintiffs' Counsel's Application For an Award of Attorneys' Fees and Reimbursement of Expenses ("Pl. Mem."), dated September 5, 2006, at 1-2.) Lead Plaintiff's Counsel also claims a lodestar of $16,655,970.60 based upon 47,846.07 hours worked (including lawyers and paralegals) (see Compendium of Affidavits, dated September 5, 2006); and seeks a lodestar "multiplier" of 5.8 (Pl. Mem. at 15) which is to say fees totaling 5.8 times the number of hours actually worked. Lead Plaintiff argues that the Fee Application should be granted because, among other reasons: (1) the "fee requested in this case, 8.5% of the proposed Settlement, is at the lower end of, or below, the range of fees awarded by courts under the percentage method in cases involving very large recoveries" (Pl. Mem. at 3); (2) "[s]ignificantly higher percentage fees have been awarded in numerous cases that were far less risky, were not as intensely litigated and did not get past the class certification stage" (Pl. Mem. at 3); and (3) "OPTrust ... the fiduciary representative of the Nortel I Class, has stated its belief that such fee is fair and reasonable to the Nortel I Class and Plaintiff Counsel and should be approved by the Court." (Pl. Mem. at 4.)

   Ten objections were filed in opposition to Lead Plaintiff's Counsel's Fee Application, one of

---

[1] See Order Approving Lead Counsel, dated February 4, 2002, at 1 ("[T]he Court hereby ... affirms its choice of (lead) counsel, Milberg Weiss, as sole lead Plaintiff's counsel....").

which, Rinis Travel Service, offers detailed and substantive grounds for its opposition. Rinis argues that "[t]he overall size of the fee is grossly excessive ... and ... is much more than should be justified in this settlement." (See Objections and Notice of Intent to Appear at the Fairness Hearing, dated September 19, 2006, at 2.) **The Court, for the reasons set forth below, finds that an award of $101 million in legal fees and expenses is excessive.**

## II.  Legal Standard

A party seeking attorneys' fees bears the "burden of 'establishing entitlement to an award . . . .'" Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999) (citation omitted).

Attorneys who create a "common fund" are entitled to "a reasonable fee--set by the court--to be taken from the fund." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Id. The lodestar may be increased "by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." Id. (citations omitted). Under the percentage method of awarding legal fees, the "court sets some percentage of the recovery as a fee," but "look[s] to the same 'less objective' factors that are used to determine the multiplier for the lodestar." Id.; Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 123 (2d Cir. 2005).

"[N]o matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Goldberger, 209 F.3d at 50 (citation omitted).

## III.  Analysis

Employing the percentage method of fixing Plaintiff's attorney compensation (while relying

-2-

upon the lodestar method as a "cross-check"), the Court finds, for the reasons that follow, that 3% of the Gross Cash Settlement Fund and 3% of the Gross Settlement Shares is fair and reasonable fee under Goldberger and related cases. This would result in legal fees of approximately $34 million (using a 2.05 multiplier of the lodestar). This result serves the dual purposes of encouraging counsel to bring appropriate cases and not granting fee awards that are excessive. See Goldberger, 209 F.3d at 53.

The first Goldberger factor relates to "the time and labor expended by counsel." Because the Court is awarding fees on a percentage basis, the Court need not "exhaustively scrutinize" counsel's hourly submissions. Goldberger, 209 F.3d at 49-50. But, in fact, the Court has reviewed counsel's hourly submissions and concluded that they appear accurate.

As to the second and third Goldberger factors -- i.e., "the magnitude and complexities of the litigation" and the risk of pursuing the case on a contingency basis -- the Court finds that the complexity and risks faced by Plaintiffs in this case are not significantly different or greater than those faced by plaintiffs in other large securities litigations and are certainly fairly compensated at 2.04 times the hours actually expended. See, e.g., In re Bristol-Myers Squibb Secs. Litig., 361 F.Supp.2d 229, 234 (S.D.N.Y. 2005). Plaintiffs identified the following (not altogether atypical) complexities, among others: (i) Plaintiffs would have to prove that Nortel's forward guidance and accounting were materially false and misleading; (ii) "the difficulties and complexities of issues relating to proof of loss causation and damages were very real"; and (iii) Nortel might not be able financially to survive two liability and damage judgments resulting from Nortel I and Nortel II. (See Plaintiff's Memorandum of Law In Support of Final Approval, dated September 5, 2006, at 9, 15.)

As to the fourth Goldberger factor – i.e. "quality of the representation" – the Court notes that Plaintiff's counsel Milberg, Weiss, Bershad, & Schulman ("Milberg Weiss") is qualified and

experienced in these matters.[2] Counsel's primary work in this matter, apart from discovery, was successfully defending against a defense motion to dismiss, filed in or about April 2002, (see Decision and Order, dated January 6, 2003), and obtaining class certification in September 2003. (See Decision and Order, dated September 8, 2003.)

With respect to the fifth Goldberger factor - i.e., "the requested fee in relation to the settlement" - the Court finds that a 3% fee is reasonable under the circumstances of this case and is consistent with fees granted in other securities cases. See, e.g., In re Bristol-Myers Squibb Securities Litigation, 361 F.Supp.2d 229, 237 (S.D.N.Y. 2005) (approving a lodestar multiplier of 2.29); In re WorldCom, Inc. Securities Litigation, No. 02 Civ. 3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) (approving lodestar multiplier of 2.46); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 123 (2d Cir. 2005) (approving lodestar multiplier of 3.5)

As to the sixth Goldberger factor – "public policy considerations" – a fee award of 3% or two times the value of hours actually worked (by nine law firms) both encourages lead plaintiff's counsel to pursue securities litigations and helps ensure against the specter of excessive fees of individual firms or multiple firms in the aggregate. See Klein v. Salvi, 02 Civ.1862, 2004 WL 596109, at *10-11 (S.D.N.Y. March 30, 2004); see also In re Dreyfus Aggressive Growth Mut. Fund Litigation, 98 CV 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001). This result balances the "overarching concern for moderation" (with respect to attorneys' fees) with the public policy encouraging the enforcement of the securities laws. See Goldberger, 209 F.3d at 53.

The reasonableness of the award proposed by the Court is confirmed by a lodestar analysis "cross-check." Goldberger, 209 F.3d at 50. Based upon a lodestar of $16,655,970.60, a 3% fee award

---

[2] It should also be noted that on or about May 18, 2006, an Indictment was filed in the United States District Court for the Central District of California against Milberg Weiss and two of its partners, David Bershad and Steven Schulman. Following a hearing held by this Court on June 15, 2006, Milberg Weiss (voluntarily) substituted Sanford P. Dumain, a partner in the firm, for Mr. Bershad, who had been principal counsel in this action. (See Transcript, dated June 15, 2006, at 21.)

-4-

reflects a multiplier of approximately 2.05. See, e.g., In re Bristol-Myers Squibb Securities Litigation, 361 F.Supp.2d 229, 230, 237 (S.D.N.Y. 2005) (approving a lodestar multiplier of 2.29, resulting in an award of 4% of a $300 million settlement fund); In re WorldCom, Inc. Securities Litigation, No. 02 Civ. 3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) (approving lodestar multiplier of 2.46, resulting in a 5.5% award of a $2.6 billion settlement fund); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106, 123 (2d Cir. 2005) (approving lodestar multiplier of 3.5, resulting in an award of 6.5% of $3 billion settlement fund).

The Court also finds that Lead Plaintiff's Counsel's request for the reimbursement of expenses in the amount of $3,750,041.27 is reasonable. See In re Ashanti Goldfields, No. 00 Civ. 717, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."). The requested fees consist of, among other things, payment of experts and consultants ($2,616,636.61), photocopying and reproduction ($537,961.01), legal research ($49,810.10), and transportation and lodging ($311,476.43). (See Compendium of Affidavits, dated September 5, 2006, at Ex. A.)

* * *