```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/20/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
              :
IN RE NORTEL NETWORKS CORP.       :     01 Civ. 1855 (RMB)
SECURITIES LITIGATION             :
              :     **DECISION & ORDER**
              :
------------------------------------------------------------x

## I. Background

Before the Court is the Renewed Omnibus Motion for Awards of Administrative Fees and Expenses ("Motion"), filed on July 21, 2010 by Lead Plaintiff and Class Representative, Ontario Public Service Employees' Union Pension Plan Trust Fund ("Lead Plaintiff"), and seeking: (1) award(s) to attorneys Milberg LLP ("Milberg") in the amount of $1,446,071, and to the Canadian law firm Koskie Minsky LLP ("Koskie") in the amount of $238,745 (CAD$) of additional legal fees that "were not included" in Lead Plaintiff's Counsel's 2006 Fee Application, dated September 5, 2006;[1] (2) award(s) to Lead Plaintiff's Counsel for additional expenses in the amounts of $350,599 for Milberg and $138,391 (CAD$) for Koskie; and (3) an award to the Claims Administrator, The Garden City Group, Inc. ("GCG"), in the amount of $656,714 for "fees and expenses for its services rendered for the period January 1, 2009 to July 15, 2010." (Mot. at 2.) These requests total approximately $2.77 million and, if granted, would leave a balance of approximately $55,000 in the Net Cash Settlement Fund which currently stands at approximately $2.83 million. (See Order, dated Feb. 11, 2010.)[2]

The Motion is, in the Court's view, unusual because the Court has already awarded very substantial legal fees and expenses to Lead Plaintiff's Counsel and to the Claims Administrator as follows: (a) approximately $34 million for fees and $4 million for expenses were awarded to

---

[1] Milberg and Koskie are collectively referred to as Lead Plaintiff's Counsel.

[2] As set forth below, see p. 12, infra, the Court approves approximately $1.16 million of the $2.77 million total amount requested.

Lead Plaintiff's Counsel on January 29, 2007; and (b) $1.8 million was awarded to GCG on July 15, 2009 **in addition to** earlier payments to GCG totaling in excess of $9 million.[3]

By way of background, on January 29, 2007, the Court entered an Order and Final Judgment ("Final Judgment") approving the Stipulation and Agreement of Settlement, dated June 20, 2006, that had been reached by the parties and, as noted, awarded Lead Plaintiff's Counsel fees in excess of $34 million (in the form of cash and Nortel Networks Corporation ("Nortel") stock) and $3,750,041.27 in expenses. (See Final Judgment at 10–11.)[4] The $34 million plus legal fee award was appealed by Lead Plaintiff's Counsel – as insufficient – to the United States Court of Appeals for the Second Circuit and was affirmed. (See Decl. of George A. Bauer III in Supp. of Mot., dated Dec. 1, 2009 ("Bauer Decl."), ¶ 5); see also In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 134 (2d Cir. 2008) ("Given the district court's careful analysis of the Goldberger factors, we conclude that the fee award here does not fall outside the bounds of the district court's discretion.").[5]

Pursuant to the Court's Order, dated March 11, 2008 ("Initial Distribution Order"), Lead Plaintiff and GCG distributed to class members "the Net Settlement Shares and 90% of the Net Cash Settlement Fund" on May 8, 2008 ("Initial Distribution"). (See Initial Distribution Order at 3; Ltr. from George A. Bauer III to Hon. Richard M. Berman, dated Feb. 9, 2009 ("Bauer Ltr."), at 1–2.) Lead Plaintiff and GCG distributed the remaining 10% of the Net Cash Settlement Fund

---

[3]  Lead Plaintiff's Counsel originally requested an award of fees and expenses of approximately $101 million in its September 5, 2006 fee application. (See Mem. of Law in Supp. of Lead Pl.'s Counsel's Appl. for an Award of Attorney's Fees and Reimbursement of Expenses, dated Sept. 5, 2006, at 3–5; see also Final Judgment Ex. A at 1.)

[4]  Lead Plaintiff's Counsel and GCG submit fee requests in this Motion dating back to September 1, 2006. (See Bauer Decl. Ex. B; Gold Decl. Ex. B.)

[5]  The Court's analysis of the Goldberger factors found in Exhibit A of the Final Judgment is incorporated by reference.

2

on December 19, 2008 and on March 15, 2010. (See Bauer Ltr. at 2; see also Supplemental Aff. of Stephen J. Cirami in Supp. of Mot., dated July 20, 2010 ("Supplemental Cirami Aff."), ¶ 2.)

On July 15, 2009, as noted, the Court awarded GCG $1,759,143.40 in connection with the class distributions on May 8, 2008 and December 19, 2008. (See Order, dated July 15, 2009, at 2–3.) Prior to the July 15, 2009 award, GCG had – without prior Court review and approval – "received interim payments . . . totaling $9,046,494.72" at Milberg's direction.[6] (Initial Distribution Order at 2.)

**For the reasons set forth below, the Renewed Omnibus Motion for Awards of Administrative Fees and Expenses is granted in part and denied in part.**

## II.     Legal Standard

Attorneys who create a "common fund" are entitled to "a reasonable fee – set by the court – to be taken from the fund." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). Courts often take into consideration the fact that "[c]lass [c]ounsel will continue to be responsible for post-settlement work" when determining a fee award. Bellifemine v. Sanofi-Aventis U.S. LLC, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010); see also 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 14:6 (4th ed. 2010).

A court may also "award . . . supplemental fees to compensate counsel" for, among other things, reasonable fees and expenses not anticipated at the time of the initial fee award. Goodman v. Heublein, Inc., 682 F.2d 44, 48 (2d Cir. 1982).

---

[6]     (See Tr. of Proceedings, dated Mar. 4, 2008, 14:17-25 (THE COURT: "I am reading [S]tipulation paragraph nine which says Lead Plaintiff's Counsel will apply to the Court for an order approving Claims Administrator administrative determinations concerning the acceptance and rejection of the claims and approving any fees and expenses not previously applied for relating to the administration of the settlement." MR. BAUER: "Right." THE COURT: "Including the fees and expenses of the Claims Administrator.").)

3

**III.   Analysis**

**(1)   Lead Plaintiff's Counsel's Request for Additional Legal Fees**

The Court respectfully concludes that the additional fees sought in the instant Motion should be reduced or denied because the time sheets submitted by Lead Plaintiff's Counsel do not substantiate additional payments and because a significant portion of the fees requested are covered by the $34 million plus fee award(s) already made in the Final Judgment.

**Improper Staffing or Inadequate Documentation**

As to the entire period for which Lead Plaintiff's Counsel seeks an award of fees, i.e., from September 1, 2006 to June 30, 2010, the Court reduces the amount of requested fees, which total $1,446,071 for Milberg and $238,745 (CAD$) for Koskie, (see Bauer Decl. Ex. A; Decl. of Murray Gold in Supp. of Mot., dated Nov. 30, 2009 ("Gold Decl."), Ex. A; Supplemental Decl. of George A. Bauer III in Supp. of Mot., dated July 21, 2010 ("Supplemental Bauer Decl."), Ex. A), by 35% because of improper staffing and/or because they are not supported by adequate documentation, as follows:

The six partners on the case, whose hourly rates range from $475 (CAD$) to $550 (CAD$) for Koskie, and from $420 to $725 for Milberg, billed a total of 1,981 hours between September 1, 2006 to June 30, 2010, or 97.2% of the total attorney time. (See Bauer Decl. Ex. A; Gold Decl. Ex. A; Supplemental Bauer Decl. Ex. A.) The three associates assigned to the case, whose hourly rates are $275 (CAD$) for Koskie, and range from $360 to $365 for Milberg, billed a total of 58 hours, or 2.8% of the total attorney time. (See Bauer Decl. Ex. A; Supplemental Bauer Decl. Ex. A; Gold Decl. Ex. A.) The remaining hours, which comprise 41% of the total hours for which a supplemental award is sought, were charged by "[p]aralegals and

4

[o]ther [p]rofessionals" at $75 (CAD$) to $200 (CAD$) an hour for Koskie and $225 to $400 an hour for Milberg. (Bauer Decl. Ex. A; Supplemental Bauer Decl. Ex. A; Gold Decl. Ex. A.)

It is clear that a significant portion of the work done by senior attorneys could have been performed by more junior attorneys or paralegals at lower billing rates. See Rossa v. PI Mgm't Assoc., No. 02 Civ. 1702, 2006 U.S. Dist. LEXIS 27127, at *11–12 (S.D.N.Y. May 5, 2006). For example, Mr. Bauer, a partner at Milberg charging $725 an hour, billed for certain tasks that easily could have been performed by more junior attorneys or paralegals, including "get PDF copies to GCG for filing on Website"; "send signature on addendum #2 to FMC regarding BC retention"; "update Excel spreadsheets for Escrow Agents and send information to [Defendant's counsel]"; "receive [Murray Gold] signature and fax to HSBC"; and "send courtesy copies to all counsel." (See Bauer Decl. Ex. B.) Similarly, Murray Gold, a partner at Koskie charging $475 an hour, requests reimbursement for tasks such as "review[ing] caselaw"; "review[ing] file documentation"; and "attending to file." (Gold Decl. Ex. B.)

Also, paralegal time entries are too imprecise and vague for meaningful review much less reimbursement, including, among other things, billings for "claims project cont'd"; "project work"; and "further legal research." (Bauer Decl. Ex. B; Gold Decl. Ex. B); see Schruefer v. Winthorpe Grant, Inc., No. 99 Civ. 9365, 2003 U.S. Dist. LEXIS 11179, at *11 (S.D.N.Y. July 2, 2003) (reducing billings for imprecise and vague time entries such as "various phone conferences"; "review file"; "legal research"; and "case administration").

Accordingly, the Court concludes that Lead Plaintiff's Counsel's request for fees billed from September 1, 2006 to June 30, 2010 should be reduced by 35%; i.e., from $1,401,071 to $910,696 for Milberg and from $238,745 (CAD$) to $155,184 (CAD$) for Koskie ("Total Fees"), because the timesheets reflect an overly expensive and/or inefficient allocation of

5

resources. See In re Painewebber Ltd. P'ships Litig., No. 94 Civ. 8547, 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003) ("Because 'it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application,' courts apply across-the-board percentage cuts 'as a practical means of trimming fat from a fee application.'") (quoting N.Y. State Ass'n for Retarded Children, Inc. (NYSARC) v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)); see Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

As set forth below, the Court addresses separately the Total Fees incurred: (i) from September 1, 2006 to the Initial Distribution made on May 8, 2008 that are in the amounts of $512,924 for Milberg and $155,184 (CAD$) for Koskie; and (ii) the Total Fees incurred from May 9, 2008 to June 30, 2010 that are in the amount of $397,772 for Milberg. (See Bauer Decl. Ex. B; Gold Decl. Ex. B.)

**September 1, 2006 to May 8, 2008 Fees**

The Total Fees for this period are $512,924 for Milberg and $155,184 (CAD$) for Koskie. Based upon the timesheets attached to the Bauer and Gold Declarations, it appears that approximately half of these fees were incurred in connection with tasks customary and necessary to the resolution of this class action, e.g., distribution of the Net Cash Settlement Fund and claims administration, and were reasonably anticipated and included in the fee awarded in the Final Judgment. (See, e.g., Bauer Decl. ¶ 11 (fees for "dealing with the processing of proofs of claim" and "administration of the investment and taxation of the Settlement Fund"), 15 ("coordinate with Claims Administrator re mailings and exclusion requests"; "work on responses to objections"; "confer with Claims Administrator re establishing parameters for allowing or

6

rejecting Proofs of Claims"; and "[d]eal with issues regarding implementation of corporate governance changes required under the Settlement Stipulation"); see also id. Ex. B.)

In the Final Judgment, the Court awarded $34 million plus in fees using the percentage of recovery method (which reflected a 2.05 "multiplier") for **all** tasks reasonably undertaken and to be undertaken in connection with the Settlement of this class action. (See Final Judgment at 3, 10 (award "fairly compensates such counsel for their respective contributions in the prosecution and settlement of the Action"), Ex. A); see Wing v. Asarco Inc., 114 F.3d 986, 989 (9th Cir. 1997) ("the multiplier (as well as the resultant fee) is justifiable on the basis of another factor: class counsel's continuing obligations to the class"); see also 4 Newberg on Class Actions § 14:6 ("one of the primary purposes of using the [percentage of recovery] method is to stimulate class counsel's incentives toward efficient prosecution of class actions"). **The fee award granted on January 29, 2007 was not designed or intended as a simple "installment payment."**

At the same time, the Court recognizes that Lead Plaintiff's Counsel was required to devote time to addressing some (arguably) unanticipated post-settlement issues during this period. (See, e.g., Bauer Decl. ¶¶ 11 (fees billed for "arranging with Escrow bank to consent to concurrent Canadian jurisdiction"; and "reviewing, at th[e] Court's direction, all the disputed Proof of Claim files"), 15.)

The Court concludes that approximately half of Lead Plaintiff's Counsel's fees for September 1, 2006 to May 8, 2008 are appropriate ("unanticipated") and therefore finds that 50% of the fees requested for this period, i.e., $256,462 for Milberg and $77,592 (CAD$) for Koskie, are compensable. See In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410, at *4; Lunday, 42 F.3d at 134.

7

**May 9, 2008 to June 30, 2010 Fees**

The Court also recognizes that the additional rounds of distributions to class members that occurred on December 18, 2008 and March 15, 2010 (arguably) were unanticipated in this action.[7] The Court concludes that Lead Plaintiff's Counsel should be compensated for time spent in connection with the distributions made on December 19, 2008 and on March 15, 2010, i.e., which occurred during the May 9, 2008 to June 30, 2010 period. Therefore, the Court awards Milberg its Total Fees for this period, or $397,772.

(2)   **Lead Plaintiff's Counsel's Request for Additional Legal Expenses**

Although classified by Lead Plaintiff's Counsel as an "expense," approximately $389,400 of the total expenses claimed by Milberg and Koskie are principally for legal fees incurred by a Canadian law firm, Fraser Milner Casgrain LLP ("FMC"). (See Bauer Decl. ¶ 12; see also Bauer Decl. Ex. A; Gold Decl. Ex. A.) Milberg apparently retained FMC "to represent the Lead Plaintiff's interest . . . against Quebec Class Counsel's fee requests that were in excess of the amounts the Lead Plaintiff thought appropriate." (Bauer Decl. ¶ 12.) But there is no showing, aside from Lead Plaintiff's Counsel's assurances, (see Ltr. from George A. Bauer III to Hon. Richard M. Berman, dated Dec. 18, 2009), as to when and how FMC improved the settlement and what it did to bring this about. FMC does not appear to have sought an award of fees and expenses from the Canadian courts it purportedly assisted by objecting to the fees sought by other Canadian counsel. See In re Anchor Secs. Litig., No. 88 Civ. 3024, 1991 WL 53651, at *1–2 (E.D.N.Y. Apr. 8, 1991) (denying fees to objectors' counsel because they "did not assist

---

[7]   It is not at all uncommon for there to be further distributions after an initial distribution. See, e.g., S.E.C. v. Bear, Stearns & Co. Inc., 626 F. Supp. 2d 402, 417 (S.D.N.Y. 2009) ("this Court determined that more could be done [and as] a result, a second distribution phase employed targeted outreach"); In re Gilat Satellite Networks, Ltd., No. 02 Civ. 1510, 2009 WL 803382, at *8 (E.D.N.Y. Mar. 25, 2009).

[the court] in framing the issues for the settlement, . . . 'enhance' or 'improve' the recovery itself or its structure," or "affect[] the outcome as to fees"). There is no way of knowing what impact, if any, FMC's objections had on the settlement of this case and/or Canadian counsel's fee award. (See Ltr. from Joel P. Rochon to Hon. Richard M. Berman, dated Dec. 11, 2009, at 2 ("Lead Plaintiff's share of the expenses related to the retaining of [FMC] in respect of objections to the fee applications of Canadian Class Counsel . . . were completely unnecessary . . . [,] should not have to be borne by the class and that doing so would offend the tradition of our Canadian courts in not awarding costs to objectors from class settlement proceeds"); see also Ltr. from Joel P. Rochon to Hon. Richard M. Berman, dated Jan. 7, 2010, at 2 ("expenses paid to Fraser Milner Casgrain LLP should be declined" because "[a] review of the substantial costs sought bears out the excessive fees and 'overkill' approach taken").) Reimbursement of these FMC "expenses" is, therefore, denied without prejudice. Lead Plaintiff's Counsel may make a further submission dealing with the Court's concerns, including any orders issued by the Canadian courts and transcripts of proceedings that demonstrate FMC's contribution. Such submissions may be made by September 13, 2010.

Moreover, Lead Plaintiff's Counsel does not provide any of FMC's timesheets or itemizations of FMC's expenses. See Mr. X v. N.Y. State Educ. Dep't., 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) ("Time records should enable the court to determine the nature of the tasks performed and the amount of time reasonably required to perform those tasks."). "Because 'contemporaneous time records are a prerequisite for attorney's fees' in the Second Circuit, NYSARC, 711 F.2d at 1147, the Court will not award [FMC's] attorneys' fees and expenses until [FMC] submits to the Court the requisite contemporaneous time records." In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410, at *4.

9

At the same time, Lead Plaintiff's Counsel's request for reimbursement of certain expenses incurred from September 1, 2006 to June 30, 2010 in the amounts of $69,066 for Milberg and $26,502 (CAD$) for Koskie and which are not related to FMC's fees and expenses – and not embraced by the fee award made in the Final Judgment – appears reasonable. See In re Ashanti Goldfields, No. 00 Civ. 717, 2005 U.S. Dist. LEXIS 28431, at *5 (E.D.N.Y. Nov. 15, 2005) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."). The expenses include, among other things, court fees ($1,320.50), photocopying and printing ($9,040.22), postage and messengers ($4,583.48), transportation and lodging ($11,029.07), telephone bills ($182.85), and expert and electronic litigation database support ($24,172.05). (See Bauer Decl. Ex. C; see also Gold Decl. Ex. C); see also In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (citation omitted); see also In re Top Tankers, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at *59 (S.D.N.Y. July 31, 2008).

### (3) Claims Administrator Garden City Group's Request for Additional Fees and Expenses

As noted, GCG already has been paid $10,805,638.12 for claims administration, a generous amount by any standard. (See Initial Distribution Order at 2; Order, dated July 15, 2009, at 2–3.) GCG now submits two additional invoices, one in the amount of $295,983.19 for fees and expenses incurred from January 1, 2009 to November 15, 2009 ("First GCG Invoice"), during which time it did **not** make any distributions to class members. (See Aff. of Stephen J. Cirami in Supp. of Mot., dated Nov. 30, 2009 ("Cirami Aff."), Ex. A.) The second invoice is in the amount of $360,730.72 for fees and expenses incurred from November 16, 2009 to July 15, 2010 ("Second GCG Invoice"), during which time GCG implemented a distribution on March 15, 2010. (See Supplemental Cirami Aff. Ex. A.) Based upon a review of these invoices and

10

other papers submitted in support of GCG's requested additional fees and expenses totaling $656,713.91, the Court concludes that approximately one-third of the fees and expenses billed by GCG in the First GCG Invoice are insupportable because, among other reasons, GCG appears to have spent more hours on project management, systems support and quality assurance during the billing period covered by the First GCG Invoice – when it did not make any distributions – than it did during the billing period covered by the Second GCG Invoice, during which time it distributed checks totaling $35 million to 105,323 class members. (Compare Cirami Aff. Ex. A with Supplemental Cirami Aff. Ex. A.) Accordingly, the Court reduces the fees and expenses requested in the First GCG Invoice by one-third, i.e., from $295,983 to $197,322, and awards GCG the amount requested in the Second GCG Invoice. See In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410, at *4; Lunday, 42 F.3d at 134. This results in a total award to GCG for fees and expenses in the amount of $558,052.85.

**Residual Amount**

The Plan of Allocation approved by the Court in the Final Judgment provides that funds remaining in the Net Cash Settlement Fund shall "be contributed proportionally to United States and Canadian non-sectarian, not-for profit organizations designated by plaintiffs' counsel . . . after notice to the [US and Canadian] Courts and subject to the direction, if any, by the Courts." (Mot. at 3 (quoting Plan of Allocation); see Final Judgment at 1–2.)

"The [Second Circuit] has indicated that the draft Principles of the Law of Aggregate Litigation by the American Law Institute (the 'ALI Draft') is an appropriate standard for courts to consider in distributing class actions settlements." Bear, Stearns & Co., 626 F. Supp. 2d at 416 (citing Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007)). "The ALI Draft . . . caution[s] that if 'the court finds that individual distributions are not viable . . . ,

11

the settlement may utilize a cy pres approach only if the parties can identify a recipient involving the same subject matter as the lawsuit that reasonably approximates the interests being pursued by the class." Id. (citing ALI Draft, § 3.07 at 231); see also Masters, 473 F.3d at 436.

The Court directs Lead Plaintiff to submit by September 13, 2010 the names of (and rationale for) at least six proposed (U.S. and Canadian) recipients of the balance of the Net Cash Settlement Fund that satisfy the requirements of the Plan of Allocation as well as the standards set forth in the ALI Draft. See Bear, Stearns & Co., 626 F. Supp. 2d at 414–19. The Court would also encourage a submission from Nortel regarding whether these funds may appropriately be returned to the corporation.

## IV.  Conclusion & Order

For the reasons set forth above, the Renewed Omnibus Motion for Awards of Administrative Fees and Expenses [#258] is granted in part and denied in part. Milberg and Koskie are awarded $654,462 and $77,592 (CAD$), respectively, in fees and $69,066 and $26,502 (CAD$), respectively, in expenses. GCG is awarded $558,052.85 in fees and expenses. These amounts may be paid from the Net Cash Settlement Fund. (The awards in Canadian dollars are to be paid in U.S. dollars using the CAD/USD rate of conversion for the last business day prior to the date of payment.)

Dated: New York, New York
       August 20, 2010

_Richard M. Berman_
RICHARD M. BERMAN, U.S.D.J.